AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                                        )   Case No.  MR 24-1295
6015 Iliff Rd NW Room 258 )
Albuquerque, New Mexico 87121 )

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached hereto and incorporated herein.

located in the _____ District of ____New Mexico____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1); 924 (C); 21 U.S.C. §§ 841(a)(1); 846 | FIP; Possessing a Firearm in Furtherance of Drug Trafficking Crime; Possession with Intent to Distribute a Controlled Substance; Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jennifer Lopez, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__electronically signed and telephonically sworn__ *(specify reliable electronic means)*.

Date: 07/10/2024

_____
*Judge's signature*

City and state: Albuquerque, New Mexico    Jennifer M. Rozzoni U.S Judge Magistrate
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jennifer Lopez, being duly sworn, do hereby depose and state as follow:

### INTRODUCTION AND PURPOSE OF THE AFFIDAVIT

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and am recognized as a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. I am submitting this affidavit in support of a search warrant for the premises associated with JOSE GONZALEZ a.k.a. "COCHINO," located at room 258 at the Motel 6, 6015 Iliff Rd NW, Albuquerque, New Mexico 87121, (hereinafter "Subject Premises") for firearms, narcotics, and evidence of illicit firearms and narcotics possession in violations of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm, 18 U.S.C. § 924(C): Possessing a Firearm in Furtherance of Drug Trafficking Crime, 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance and 21 U.S.C. § 846: Conspiracy to Distribute a Controlled Substance (hereinafter the "Target Offenses").

2. Hereinafter, I may refer to the aforementioned location as the "Subject Premises" and the subject as "GONZALEZ." Based on the evidence obtained in this investigation, and as described herein, I believe there is probable cause to believe the Subject Premises contains evidence, fruits, and instrumentalities of the Target Offenses.

3. The Subject Premises to be searched has been described in Attachment A, which has been attached hereto and incorporated herein by reference. The particular evidence, fruits, and instrumentalities to be seized by agents are set forth in Attachment B, which has been attached hereto and incorporated herein.

4. This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this matter; however, the affidavit sets forth only the facts that support probable cause to search the Subject Premises as relevant background information. All figures, times, and calculations set forth herein are approximate. Any observations referenced herein that I did not personally witness were relayed to me in oral or written reports by law enforcement officers who assisted in the investigation of GONZALEZ.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

### AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

5. I am employed as a Special Agent with the FBI and have been a law enforcement officer for more than 4 years. I am assigned to the FBI Albuquerque Field Office, Violent Gang Task Force (VGTF), where I primarily investigate violent street gangs, violent repeat offenders and criminal enterprises engaged in violations of the Controlled Substances Act, firearms violations, murder, racketeering and other violations of Federal law. My investigative training and experience include, but is not limited to, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public records. I was a police officer before joining the FBI.

6. Over the course of my career, I have arrested numerous persons for offenses relating to drug possession and distribution, driving while intoxicated and or driving under the influence (DWI/DUI), firearm violations, assaults and other criminal conduct.

7. Through my training and experience, I am familiar with the methods and means used by individuals, drug trafficking organizations ("DTO"s), and gang/criminal enterprises to purchase, transport, store, and distribute controlled substances and firearms. I am also familiar with how those individuals and organizations hide the substantial profits generated from their criminal activities. I have learned that these individuals often keep firearms in close proximity to themselves, and their product and proceeds, to protect them from other drug traffickers and law enforcement.

8. I know that firearms are tools of the trade and instrumentalities of the crime of drug trafficking, particularly in instances involving subjects who have committed prior violent crimes and/or firearms violations. It has been my experience that criminals who illegally possess firearms often do not part with such firearms, as it may be difficult for criminals to acquire them. I know that gang members often possess firearms on or near their person, in their vehicles and residences. I know that individuals who are prohibited from possessing firearms know they are not allowed to possess those firearms, therefore they will secrete those firearms within their vehicles, outbuildings, or residences.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

9. Based on my experience, I am aware gang/criminal enterprises and DTOs utilize cellular telephones to exchange information, photographs, and felonious communications, to include the names and locations of informants, witnesses, and victims. I have also observed gang members discuss the acquisition and distribution of controlled substances and firearms to and from other members, as well as discussions about gang related assaults.

10. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

11. In my training and experience, individuals involved in gang/criminal enterprises and DTOs work hard not to get caught, including continually assessing who they think is cooperating with law enforcement and how to protect themselves from those people. These individuals seek out information tending to expose government informants and share that information with other members of the organization for the common good of the enterprise. I know that gang/criminal enterprises and members of DTOs strive to have a reputation of retaliation against informants or intimidation against government officials. I have learned that individuals involved in gang/criminal enterprises and DTOs often utilize their cell phones to communicate with others regarding suspected informants or government officials. I have also learned that gang/criminal enterprises and members of DTOs will research government officials in an attempt to ascertain their identity and the locations of their residences, in that they may search for this information on the cellular devices.

12. Based upon my training, experience, and participation in the instant investigation, as well as the investigation of other gang/criminal enterprises and DTOs, I am aware of the following information.

   a. Individuals engaged in the type of criminal conduct constituting the Target Offenses maintain

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in stash houses. This documentary evidence includes telephone numbers, address books, travel receipts, notes referencing aliases or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as, MoneyPak, Wal-Mart, Green Dot, or other debit cards, bulk U.S currency, money collection logs, such as "tally" sheets, drug load sheets, shipping/mailing receipts, detention facility inmate number lists or addresses for inmates or detention facilities.

b. I know that members and associates of gang/criminal enterprises and DTOs have access to numerous cellular phones, often at the same time, in an effort to avoid law enforcement monitoring. I have observed gang members, who are involved in drug trafficking, routinely use pre-paid phones requiring no subscriber information, or fictitious subscriber names, to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further their illicit activities, photographs and videos of gang members, controlled substances, drug proceeds, or firearms. Members of gang/criminal enterprises and DTOs often use the same strategy to mask their ownership of vehicles, real property, and utility services, in an effort to avoid detection by law enforcement.

c. In addition, I am also familiar with the use of text messaging, instant messaging, social media, and other messaging applications, used by gang/criminal enterprises and DTOs to advance their unlawful activities.

13. I have learned individuals involved in gang/criminal enterprises and DTOs possess items of identification, including but not limited to, driver's licenses, rent receipts, bills, and address books. These

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

items may be relevant to the identity of those involved in the criminal enterprise, the possessor of the items seized, and occupants of the premises searched.

### ELECTRONIC MEDIA AND FORENSIC ANALYSIS

14. As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the Subjects persons and at the Subject Premises, in whatever form they are found. Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored a cell phone. For this reason, I submit that if a cell phone is found on the Subject Premises, there is probable cause to believe those records will be stored on that cell phone. Thus, the warrant applied for would authorize the seizure of electronic media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

15. The warrant I am applying for would permit law enforcement to obtain from GONZALEZ the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

   a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

   b. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

     device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c. If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

d. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

e. As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features

will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to unlock the device using biometric features in the same manner as discussed above.

h. Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the Subject

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

Premises and reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; (2) hold the device in front of the face of those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## THE SUBJECTS

16. JOSE GONZALEZ, aka: "COCHINO": I have reviewed GONZALEZ's, be consistent throughout, criminal history and I am aware that he has been arrested at least 23 times in New Mexico and, according to the New Mexico Secure online court records, he has been convicted of the following felony offenses:

   a. Possession of cocaine with intent to distribute, on November 08, 2010, Case No: D-202-CR-2010-05472;

   b. Aggravated assault (Deadly Weapon), on June 27, 2011, Case No: D-202-CR-2011-02941;

   c. Criminal Damage to property (over $1000), on March 13, 2012, Case No: D-202-CR-2012-01221;

   d. Battery upon a Peace Officer, on June 22, 2016, Case No: D-202-CR-2016-01934;

   e. Receiving or Transferring Stolen Motor Vehicles, on August 31, 2018, Case No: D-202-CR-2018-03108;

   f. Criminal Damage to Property (Over $1000). on October 19, 2018, Case No: D-202-CR-2018-03644;

   g. Theft of a Credit Card, on October 23, 2018, Case No: D-202-CR-2018-03676;

   h. Battery upon a Peace Officer, on November 20, 2018, Case No: D-202-CR-2018-03994; and

   i. Breaking and Entering, on June 11, 2021, Case No: D-202-CR-2021-01163.

17. SERGIO GRANDARA JR, aka: "RISK": I have reviewed GRANDARA's criminal history, and he has been arrested at least seven times for aggravated battery, murder in the first degree,

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

tampering with evidence conspiracy, trafficking controlled substances, abuse of a child and possession of drug paraphernalia. GRANDARA also has a felony conviction for harboring or aiding a felon of 12/16/2010.

### THE CURRENT INVESTIGATION
### STATEMENT OF PROBABLE CAUSE

18. In late January 2024, VGTF agents received information that GONZALEZ was living at a residence in Southwest Albuquerque, where he stored firearms and trafficked narcotics. Agents subsequently conducted surveillance at GONZALEZ's residence and observed him go in and out of the residence. Agents also observed GONZALEZ's vehicle, a blue Mitsubishi lancer license plate BCJR32, parked in the driveway on multiple occasions, including the day before the below described search warrant.

19. On January 31, 2024, at approximately 0600 hours, members of the FBI, including the VGTF and Metropolitan Detention Center (MDC) Security Threat Intelligence Unit (STIU) officers, executed a search warrant at GONZALEZ's residence, located at 10115 Range Road SW Albuquerque, NM 87121. The warrant authorized agents to search for evidence of 21 U.S.C. § 841(a) distribution and possession with intent to distribute a controlled substance; 21 U.S.C. § 846 conspiracy to distribute controlled substances; 18 U.S.C. § 924(c) possession of a firearm in furtherance of a drug trafficking crime; and 18 U.S.C. § 922(g)(1) possession of a firearm by a convicted felon.

20. During the search of the location, the following items were seized from the subject premises:

   A. Approximately $34,000 in US currency;

   b. Sig Sauer model P320 M17 pistol, in 9mm caliber, serial number M17-120813 (later found stolen per NCIC);

   c. Sig Sauer model P229 Elite pistol, in 9mm serial number 55B005967 (later found stolen per NCIC);

   d. Rock Island Armory model RIA pistol, in .45 caliber, serial number RIA1713002;

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

    e.    Jiminez Arms Inc model JA380 pistol, in .380 caliber, serial number 289277 (later found stolen per NCIC);

    f.    Springfield Armory Model Saint AR-15, in .223/.556 caliber, serial number: ST436567;

    g.    AR-15 style suspected machine gun, in .223 caliber, with no serial number;

    h.    A large box of green leafy substance, suspected marijuana;

    i.    Multiple documents with GONZALEZ's name;

    j.    Clothing belonging to GONZALEZ, located in the master bedroom;

    k.    Ammunition; and

    l.    A bag with blue pills marked M30 that, when field tested, yielded a presumptive positive result for fentanyl.

21.    I later caused a search of the ATF National Firearms Registry for seized item "g" and the ATF emailed back and the result is that GONZALEZ and the firearm were not registered with the National Firearms Registry. I also sent the firearms to the laboratory for DNA swab and firearm function testing. I intend to obtain a DNA search warrant to obtain a DNA sample from GONZALEZ to compare to the firearms seized on January 31, 2024.

22.    Within the last week, I received information from the Metropolitan Detention Center Security Threat Intelligence Unit (MDC STIU) that they had intercepted a video call wherein GONZALEZ was a participant. STIU officers provided a copy of the jail call, which was recorded on July 7, 2024 at approximately 1655 hours, to VGTF agents.

23.    I watched the video call, screen shots from the video call are contained in the pages that follow and observed GONZALEZ was no longer at the residence on Range Road because he was having problems with his significant other. During the video call, GONZALEZ is seen inside the bathroom of a motel room holding a pipe in his mouth and smoking from a sheet of foil. At that point, the inmate told GONZALEZ, "stop, fool take that shit off that shit Cochino, stop fool. What the fuck" At that point, GONZALEZ removed the pipe and foil sheet from the camera and gives the phone over to SERGIO

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

GRANDARA, aka "Risk." After a few minutes, GONZALEZ then walks outside of the motel room where I was able to capture room 258, the number of the room he was coming out of.

24. I believe the room GONZALEZ was in on the video call with the inmate was Subject Premises. Screen shot pictures from the video call are included below.



Jail call photos of Gonzalez

25. On July 8, 2024, VGTF surveillance units observed 2 unknown males (UM1 and UM2) make short duration stops at room 258. UM1 was a white male wearing all black with a backpack on who walked into the Motel 6 parking lot from Coors Blvd. UM1 walked along the east side parking lot, up the stairs and stops outside the door of room 258. UM1 waited outside by the door for approximately 1 minute, made a hand-to-hand exchange from someone inside the room and left. Through my training and experience, short duration stops, and hand-to-hand exchanges are characteristics of drug trafficking. UM1 then walked out of the front office doors and continued to walk west on Coors Blvd.

26. UM2 appeared to be a Hispanic male wearing shorts and a tank top who was riding a bike. UM2 took his bike upstairs and stopped at the door of room 258. UM2 entered the room for approximately 2 minutes and exited with an unknown female (UF1). They are both seen leaving the room and go downstairs where they split and go different ways.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

27. On July 9, 2024, VGTF surveillance units observed 2 unknown males (UM3 and UM4) making short duration stops at room 258. UM3 walked into the room while UM4 (who had a bicycle with him) waited outside. UM3 then comes out of room 258 and both UM3 and UM4 go downstairs and leave the premises. During this time, Agents observed a subject matching the physical description of GONZALEZ is seen exiting the Subject Premises and followed UM3 and UM4 outside onto the walkway of room 258.



Surveillance photo of Gonzaelz at Motel 6

### THE SUBJECT PREMISES

28. The Subject Premises is located at 6015 Iliff Rd NW, Albuquerque, New Mexico 87121, and may be described as a two-story motel, white in color with blue doors throughout the motel and a sign reading "Motel 6" on the North siding of the building. The numbers 258 are posted at the top center of the blue door marked with a red circle around it. Color photographs of Subject Premises are contained within

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

Attachment A.

29. Indicia of Residence:

   A. MDC STIU provided VGTF agents with a jail video call where I observed GONZALEZ was no longer at the residence on Range Road because he was having problems with his significant other.

   B. From the jail call, I also observed GONZALEZ inside the bathroom of a motel room holding a pipe in his mouth and smoking from a sheet of foil[1]. GONZALEZ then walked out of the bathroom and exited room 258 to talk with the inmate outside.

   C. Within the last 24 hours, VGTF surveillance units observed GONZALEZ walk outside Subject Premises and stand out on the balcony walkway.

## CONCLUSION

20. Based on the information contained herein, I submit there is probable cause for a search warrant of the Subject Premises described in Attachment A to seek the items described in Attachment B for evidence pertaining to violations of the Target Offenses. This affidavit was reviewed by Assistant United States Attorney Paul Mysliwiec.

Respectfully submitted,

Jennifer Lopez
FBI Special Agent

Subscribed electronically and sworn telephonically on July 10, 2024.

JENNIFER M. ROZZONI
UNITED STATES MAGISTRATE
JUDGE DISTRICT OF NEW MEXICO

---

[1] Through my training and experience, this is a common way users can ingest narcotics.

## ATTACHMENT A

## Subject Premises

The Subject Premises is located at 6015 Iliff Rd NW, Albuquerque, New Mexico 87121, and may be described as a two-story motel, white in color with blue doors throughout the motel and a sign reading "Motel 6" on the North siding of the building. The numbers 258 are posted at the top center of the blue door marked with a red circle around it. Color photographs of Subject Premises are contained within Attachment A.





## ATTACHMENT B

### Items to be Seized

**Items to be Seized:** All evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(g)(1): Felon in possession of a firearm; 18 U.S.C. § 924(C): Possessing a firearm in furtherance of drug trafficking crime. 21 U.S.C. § 841(a)(1): Possession with intent to distribute a controlled substance; and 21 U.S.C. § 846: Conspiracy to distribute a controlled substance to include the following:

1. Firearms, firearm parts, magazines and ammunition;
2. All safes or lock boxes, where evidence of the Target Offenses may be stored for safekeeping against seizure;
3. Controlled substances, drug packaging materials, and paraphernalia;
4. Large amounts of United States Currency and expensive jewelry;
5. Video surveillance hard drives or storage devices
6. Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including utility company receipts, rent receipts, addressed envelopes, and keys. All documentation, (whether on paper or stored magnetic, digital, or optical media) describing discussions by any individual or entity concerning: the identity of persons that are involved in violations of the Target Offenses;
7. All documents and communications (whether on paper or stored magnetic, digital, or optical media) demonstrating any communication or correspondence with any person or groups of persons involved in violations of the Target Offenses;
8. All evidence related to all off-site storage units, other residences, safety deposit boxes, etc. where evidence of the Target Offenses may be stored for safekeeping against seizure; and
9. Cellular telephones and all cellular telephone records to establish ownership of the device or the residence.